# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1. PETER BAKER, | ) | |
| 2. VERONICA RIVERA, | ) | |
|     Plaintiffs, | ) | |
| v. | ) | Case No. CIV-23-337-PRW |
| 1 FIDELITY BANK, N.A., d/b/a Oklahoma Fidelity Bank, | ) ) ) | TITLE VII DISCRIMINATION AND RETALIATION ARISING IN OKLA. CNTY. |
|     Defendant. | ) | JURY TRIAL DEMANDED |

## COMPLAINT

**COME NOW THE PLAINTIFFS** and for their causes of action herein allege and state as follows:

## PARTIES

1. The Plaintiffs are:

    A. Peter Baker, an adult male, who at all times resided in the City of Moore, Cleveland County, Oklahoma, and

    B. Veronica Rivera, an adult Hispanic female, who at all times resided in McClain County, Oklahoma.

2. The Defendant is the Fidelity Bank, N.A., d/b/a Oklahoma Fidelity Bank at its Oklahoma location in Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. Plaintiffs' actions are for gender, race and national origin discrimination and harassment for Ms. Rivera in her employment and for Mr. Baker, retaliation for reporting race, national origin and gender discrimination and harassment directed to Ms. Rivera. Such claim are prohibited by Title VII of the Civil Rights Act of 1964, as amended, and by Oklahoma's anti-discrimination statutes. Jurisdiction over the federal claim is vested in this Court under 42

U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331. The state law claims arise out of the same core of facts and jurisdiction over them is vested under 28 U.S.C. § 1367. Additionally, Mr. Baker asserts a cause of action for violation of 63 O.S. § 427.8(H) which arises out of the same course of conduct.

4. All of the claims arose in Oklahoma County and the Defendant's Oklahoma office is located in such county. Oklahoma County is within the Western District of the United States District Court of Oklahoma wherefore venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF COMMON FACTS

5. Plaintiff Baker is an adult male who was employed by Defendant from approximately January 18, 2022, until his wrongful termination on June 22, 2022. At the time of Baker's termination he was Vice President and Oklahoma Treasury Manager for the Defendant.

6. After Baker was hired, Baker recommended Ms. Rivera to be hired based on past work experience with her. Mr. Baker was not involved in the interview or actual hiring of Ms. Rivera. Ms. Rivera was given a "Sales Candidate Assessment Test" were she scored hirer than the other persons at the Bank.

7. Plaintiff Rivera is a Hispanic female of Mexican descent who was employed by Defendant from approximately February 7, 2022, until her wrongful termination on June 22, 2022. At the time of her termination, Ms. Rivera was a Treasury Management Officer under the direct supervision of Mr. Baker.

8. Plaintiff was supervised by Peter Baker, a Caucasian male.

9. All of Defendant's officers in Oklahoma were male except for the Plaintiff Rivera. To Ms. Rivera's knowledge, the Defendant did not have any Hispanic officers.

10. Doug Sanders was the direct supervisor of Plaintiff Baker and the second line supervisor of Ms. Rivera.

11. As set out hereafter, Ms. Rivera suffered a sexually hostile environment which injured her in the form of emotional distress and other dignitary harm, and such harassment culminated in termination based on her gender, race and her complaints of sexual harassment.

12. As a direct result of Ms. Rivera's termination, she suffered economic losses which are on-going.

13. As the direct result of Mr. Baker's retaliatory termination, he has suffered emotional distress and on-going wage loss.

14. Because the actions of the Defendant was willful, malicious or, at the least, in reckless disregard of each Plaintiff's federally protected rights, punitive damages should be assessed against the Defendant and in favor of each Plaintiff in an amount to be determined by the jury.

15. Ms. Rivera filed a timely and proper charge of discrimination regarding race and gender discrimination, hostile environment and termination against the Defendant and with the EEOC. Such Charge was filed on or about July 5, 2022. The EEOC issued its right to sue letter on or about February 24, 2022.

16. Mr. Baker filed a timely and proper charge of discrimination and retaliation based on his opposition to race and gender discrimination, a hostile environment and termination of Ms. Rivera. Such Charge was filed on or about July 5, 2022. The EEOC issued its right to sue letter on or about February 24, 2022.

**COUNT I - SEXUAL HARASSMENT - Ms. RIVERA**

17. During Plaintiff Rivera's employment, she was sexually harassed and subjected to a sexually hostile work environment.

18. The sexual harassment of Ms. Rivera began the first day of her employment. On the day Ms. Rivera was hired, when Mr. Sanders first met Ms. Rivera, Sanders looked Ms. Rivera up and down in a very overtly sexual manner that

made her uncomfortable.  Later that same day, Mr. Sanders introduced Ms. Rivera to a group of commercial lenders and, when Ms. Rivera was shaking hands with the members of this group (all male), Eric Williams (commercial lender, VP) stood to greet her.  Mr. Sanders said, well, you can definitely get up for her, in a tone making the comment sexually suggestive and resulting in laughter by the other male employees present.

19. On the first or second day after Ms. Rivera was hired, Mr. Sanders invited Ms. Rivera to a Mexican restaurant to get acquainted with the other officers.  Sanders said he picked a Mexican restaurant because Ms. Rivera would probably be used to that.  Ms. Rivera was the only female at this lunch gathering.  Shortly after the group was seated, Mr. Sanders stared at Plaintiff's breasts, and said 'I love to look at people's shirts' while continuing to stare at Plaintiff's chest.  This caused several men to laugh, and this embarrassed the Plaintiff.  Later, at the same lunch, Eric Williams asked what Ms. Rivera did for fun, and she responded that she was married and spent most of her time at home with her family.  As the group was leaving, Mr. Williams said to the Plaintiff, 'you and I should go to lunch together, just the two of us.'  Plaintiff did not respond.

20. After this, every time Mr. Sanders saw Ms. Rivera (approximately three or more times per week), he would make a comment about her appearance or dress, and would stare at her breasts.  Several times, he would look at her up and down in an overtly sexual manner.  Mr. Sanders several times repeated his comment that he loved liked looking at shirts while staring at Plaintiff's breasts.  On one occasion, Plaintiff pointed out the impropriety of this by responding, 'Well, do you like looking at his shirt' (referring to a male co-worker), and Sanders' responded, 'No.  Some people's shirts look better than others.'

21. In April, 2022, Plaintiff was present during a conversation between Christian Lehr (director of treasury management) and Mr. Baker, when Mr. Baker asked hotels in an area where he (Baker) and Ms. Rivera were going to have travel for training. Mr. Lehr said 'I have a list of hotels, but not the hourly ones you would prefer.' Plaintiff was offended by the sexual inference.

22.. In late May, 2022, a particularly offensive instance took place when Ms. Rivera was at a business lunch with Mr. Sanders and Mr. Baker. Ms. Rivera had just been seated when Sanders' said let me show you this joke. Sanders took napkin, held it up to his face, covering a spoon underneath which he with his teeth so that it would rise up– mimicking an erection. Ms. Rivera was shocked and disgusted and did not speak for the remainder for the lunch. Although Ms. Rivera's reaction was obvious, Mr. Sanders did not apologize for his conduct. Mr. Baker, who was present, apologized to Ms. Rivera when Mr. Sanders left the table to go to the restroom.

23. These are examples of the types of incidents and conduct which were offensive to the Plaintiff and which would be offensive to any reasonable woman in Plaintiff's position. As a result of such comments and conduct, the Plaintiff found the workplace environment abusive to the degree that it made her so anxious that she took anxiety medication, had stomach issues, had difficulty sleeping and was prescribed medication to help her sleep. Plaintiff tried to avoid interactions with Mr. Sanders particularly after the incident in May.

24. Immediately after the spoon incident, Ms. Rivera made a complaint to Mr. Barefoot, who was a director of Defendant. Ms. Rivera reported Sanders' meal conduct as well as his prior conduct. Ms. Rivera reported that this conduct was sexual, offensive and that made her uncomfortable. Ms. Rivera asked 'Is this normal conduct for your office environment?' Mr. Barefoot apologized, said he didn't think this conduct was normal and stated that he did

not want her to leave, because she was a valuable addition. Mr. Barefoot did not, however, offer to take any corrective or remedial action.

25. Ms. Rivera also reported this conduct to Steve Lindquist, VP Commercial Lending, and gave him the same information she had given to Mr. Barefoot. Lindquist only action was to give Plaintiff a book to read which was regarding how to approach a new job.

26. Mr. Baker also complained of Sanders conduct towards Ms. Rivera to Mr. Barefoot, but no corrective action was promised or, to his knowledge, taken.

**WHEREFORE**, by such actions, Defendant created as sexually hostile work environment towards Ms. Baker.

## COUNT II - GENDER AND RACIAL DISCRIMINATION AND RETALIATION AGAINST RIVERA

Plaintiff Rivera incorporates all prior allegations in this Complaint, and further alleges as follows:

27. When Ms. Rivera was hired, Doug Sanders, Mr. Lehr and Jesse West stated that Ms. Rivera was being hired to serve the Hispanic customers and to increase the Hispanic base.

28. Soon after Ms. Rivera was hired, around March 21, Christian Lehr started claiming that Ms. Rivera was at the same level as to subordinate employees who were not officers.

29. When Plaintiff Rivera was hired she was supposed to be given an Assistant Vice-President title, but instead she was only given the title of "bank officer" which is a lower position.

30. In April, Mr. Lehr criticized Ms. Rivera for selling too many products to a Caucasian client even though Ms. Rivera's job was to make such sales. It appeared that Mr. Lehr was distrustful of Plaintiff as a Hispanic female making sales that the other Caucasian employees had not been able to make.

31. In April, Mr. Lehr and Mr. Sanders also required that all of Ms. Rivera's emails be reviewed before they could be sent claiming that she had made a grammatical error in an email. All of Ms. Rivera's emails had copied to Mr. Baker and there were no grammatical errors he noticed and certainly not anything significant. Defendant could not identify the error or show it to either Rivera or Mr. Baker.

32. Finally, in April, Mr. Lehr and Mr. Sanders also instructed that Ms. Rivera could not sales calls to current clients, so that there would be no 'damage' to those customers. There was no damage to current customers and no customer complaints and this was known by both Ms. Rivera and Mr. Baker.

33. On or about April 15, Doug Sanders stated to Mr. Baker regarding Ms. Rivera words to the effect that: "She's a woman, give her a small task. She should be assisting, not acting independently or showing initiative." Sanders repeated that he did not want her meeting individually with customers even though that was the job she was hired to do.

34. Around April 25, there was a strategy meeting with Mr. Baker, Mr. Sanders and Mr. Lehr, regarding a business opportunity with a new company which had a large Hispanic workforce. Mr. Baker asked about seeking check accounts for the workforce and Sander and Lehr responded with words to the effect, 'they're Hispanic, they live paycheck to paycheck, and they don't need accounts, they just use cash.' Mr. Baker disputed that and said the Bank should prejudge those individuals, but he was overruled.

35. In late April, Eric Willmer, asked Ms. Rivera to contact a Hispanic client who Willmer said he (Willmer) had not been able to reach. Ms. Rivera went to that customer's office and met with him. In the course of this meeting, Ms. Rivera discovered that the customer owned a number of strip malls, restaurant, a concrete business, night clubs, and was involved in movie production in

Mexico. Ms. Rivera reported that this gentleman was potentially a very substantial customer and that she could secure more business from him for the bank. Instead, Mr. Sanders and Mr. Willmer made fun of this gentlemen and indicated that the Defendant was not interested in doing more business with this Mexican.

36. After Ms. Rivera made her complaint of sexual harassment, Mr. Lehr told Mr. Baker that Ms. Rivera should not be calling on customers, because she was not polished enough. Mr. Baker stated words to the effect, "I'm training her, what do you mean by not being polished? I have to know the issue if I'm going to train her properly." Mr. Lehr could not give any examples and dropped the subject.

37. In late May Defendant being interviewing for an equivalent position to that held by Ms. Rivera, but to work in Tulsa. On or about June 9, a Caucasian female was hired into this equivalent position with the option to start either June 21 or July 6, 2022.

38. On June 22, less than a month after her report of sexual harassment, Defendant fired Ms. Rivera with notice, write-ups or explanation other than stating the Treasury officer position Rivera held was being eliminated throughout Oklahoma. There was no discussion of this with Mr. Baker prior to the termination.

39. This explanation was false as the department was not eliminated. Mr. Baker was told that he was going to train a Ms. Smith who was given Rivera's same job in Tulsa. Baker was being retained along with the two subordinate treasury assistants whom Lehr had said were of the same rank and position as Ms. Rivera. Further, it was not customary to terminate a bank officer due to a reorganization; the usual practice was to find that employee another position. Mr. Baker had, in fact, been contacted by the Bank's recruiter about other

positions being open.

40. Plaintiff was offered a severance package on her termination which, had she accepted it, would have required her to release Defendant from all claims of gender and race discrimination and retaliation.

**WHEREFORE,** Plaintiff's discrimination and her termination was based on gender and racial stereotypes and retaliation for the Plaintiff's report of sexual harassment.

## COUNT III - RETALIATION AGAINST BAKER

Plaintiff Baker incorporate all prior allegations in this Complaint, and further alleges as follows:

41. Soon after Mrs. Rivera was hired, Baker witnessed many of the inappropriate sexual comments and behavior and the racially discriminatory conduct which is described in Counts I and II of this Complaint.

42. Mr. Baker reported the sexually harassing conduct to Mr. Barefoot and made this report on or shortly after May 12 as set out previously.

43. Within a week of the May 12 report, Mr. Baker also reported to Mr. Barefoot that Baker was hearing disparaging comments regarding Hispanics in general and potential Hispanic customers. Mr. Barefoot said he was surprised by such comments and that he would check into it, however Mr. Baker never heard anything back about this.

44. On June 22, 2022, Mr. Baker learned that Ms. Rivera was being terminated. Mr. Lehr met with Mr. Baker and stated that he (Lehr) knew that Baker was upset about Ms. Rivera being terminated and was attempting to smooth that over. Mr. Baker stated that he thought Ms. Rivera's termination was unfair, and asked to know the reason for that action. Mr. Baker also protested that there were other positions Ms. Rivera could fill and that it was inappropriate to simply terminate her.

45. As the result of the Plaintiff's protest, after lunch on June 22, 2022, Mr. Baker

returned from lunch and was confronted by HR on the pretextual reason of looking for Ms. Rivera's personal property. Mr. Baker stated that he didn't know but assumed Ms. Rivera had it, but HR was insistent that they search his office and his car to see if Baker had any of Ms. Rivera's property. This was a pretext to find a reason to terminate the Plaintiff as the HR persons stated on the recording that "We're going to find something on this guy." It appeared that the actual concern was whether Mr. Baker had secured anything Ms. Rivera could use to make a claim against the Bank.

46. The Bank claimed that Mr. Baker was fired because he had inadvertently left his laptop on and it recorded the HR activities.

47. The claimed reasons for Plaintiff's termination were a pretext for retaliating against Mr. Baker for his protests against gender harassment and racial discrimination as well as the termination of Ms. Rivera.

**WHEREFORE**, judgment should be entered against the Defendant an in favor of Mr. Baker for retaliatory termination in violation of Title VII.

## CONCLUSION

Plaintiffs' pray that the jury award each Plaintiff his or her actual damages together with punitive damages, costs and attorney's fees.

**RESPECTFULLY SUBMITTED THIS 21ST DAY OF APRIL, 2023.**

s/Mark Hammons
HAMMONS, HURST, & ASSOC
Mark Hammons, OBA No. 3784
325 Dean A. McGee Avenue
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-6100
Facsimile: (405) 235-6111
Email: katie@hammonslaw.com

**JURY TRIAL DEMANDED**